UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA GARRETT,

        Plaintiff,

vs.

        Case No. 8:16-cv-02999-VMC-AAS

CREDIT PROTECTION ASSOCIATION, LP,

        Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, CREDIT PROTECTION ASSOCIATION, LP (hereinafter "CPA"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 3.01(a), moves for summary judgment and in support thereof, states as follows:

## INTRODUCTION

Plaintiff Angela Garrett brought this action alleging claims under the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et. seq.*, the Florida Consumer Collection Practices Act ("FCCPA") Fla. Stat. 559, and the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 *et. seq.* (DE 1-1). Plaintiff was a customer of Bright House Networks who placed her delinquent account with CPA for collection. CPA is also entitled to summary judgment on Plaintiff's TCPA claims because it had Plaintiff's prior express consent to call her, and Plaintiff never effectively revoked the consent to be called. Defendant is entitled to summary judgment in its favor under Plaintiff's FDCPA and FCCPA claims, because the record evidence supports CPA's position that CPA complied with the FDCPA and the communications were not harassing.

Case No. 8:16-cv-02999-VMC-AAS

**STATEMENT OF UNDISPUTED FACTS**

1. On February 23, 2015, Bright House Networks assigned an account under the name of Angela Garrett to CPA for collection of an overdue amount owed to Bright House. *See* CPA's account records attached as Exhibit "A" to Evans Declaration.

2. Plaintiff admits she signed a Bright House work order dated March 9, 2014 containing her pre-printed cellular telephone number ending in 4687. Deposition of Plaintiff at 33:9.

3. Defendant CPA received the telephone number ending in 4687 from the creditor, Bright House Networks, to which Angela Garrett owed the debt, as the contact telephone number provided by her. See work orders attached hereto as Exhibit "B" to Evans Declaration (***Ex. 1-B*** hereto).

4. CPA conducted a search of its dialing system for all calls placed to the telephone number ending in 4687. CPA attempted no more than 86 calls to the telephone number ending in 4687. *See* Ex. D to Evans Declaration (***Ex. 1-D*** hereto).

5. CPA sent an initial letter to Plaintiff with regard to its debt collection activities with respect to Plaintiff's account on December 5, 2014. See Ex. C to Evans Declaration (***Ex. 1-C*** hereto).

6. Plaintiff never sent any written correspondence to CPA. *See* Declaration of Diane Evans; deposition of Plaintiff at 59:9.

7. CPA never misrepresented the imminence of legal action. See Deposition of Plaintiff at 57-59.

8. After Plaintiff informed CPA to stop calling her on March 24, 2015, CPA ended all phone calls to Plaintiff. See Evans Declaration and Ex. A and D thereto.

9. There is no evidence of a willful, intentional or knowing violation of the TCPA by CPA as alleged.

10. There is no evidence of a willful, intentional or knowing violation of the FDCPA by CPA as alleged.

11. There is no evidence of a willful, intentional or knowing violation of the FCCPA by CPA as alleged.

## MEMORANDUM OF LAW

### I. Motion for Summary Judgment Standard

Defendant moves for summary judgment against Plaintiff. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp.*, 477 U.S. at 323. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In meeting this burden, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus.*, 475 U.S. at 587.

Nevertheless, the nonmovant need not be given the benefit of every inference, but only of every reasonable inference.  *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988). When a party's response consists of "nothing more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.  *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993); *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981), cert denied 456 U.S. 1010 (1982).  Summary judgment is entirely proper where the only evidence presented to create a material issue of fact is the non-movant's self-serving testimony. *Smith v. HCA Inc.*, No. 303CV754J99TEM, 2005 WL 1866395, at *3 (M.D. Fla. July 26, 2005) *aff'd,* 183 F. App'x 854 (11th Cir. 2006).

Based upon these principles, Defendant is entitled to summary judgment in its favor and against Plaintiff.

**II.     CPA Had Prior Express Consent to Contact Plaintiff.**

Defendant did not violate the TCPA in placing calls to Plaintiff's cellular telephone. Any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released. *Murphy v. DCI Biologicals Orlando, LLC*, Slip Copy, 797 F.3d 1302, 1308 (11th Cir. 2015).  Plaintiff released her cellular telephone number to Bright House Networks on July 26, 2014 when she signed a work order to restart/reinstall her cable service. *See* Ex. "B" to Evans Declaration (***Ex. 1-B*** hereto). Plaintiff has admitted that the work order is an accurate copy of the work order and that the signature on it is her signature.  Deposition of Plaintiff at 33:9.  The July 26, 2014 work order, which lists her cellular telephone number on the same page, constituted "express consent."  In fact, "the authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent." *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012)(compiling cases). *See e.g. Johnson v. Credit Prot. Ass'n,*

4

Case 8:16-cv-02999-VMC-AAS   Document 43   Filed 06/12/17   Page 5 of 14 PageID 172

Case No. 8:16-cv-02999-VMC-AAS

*L.P.*, No. 11-806040COV, 2012WL5875605, *11 (S.D. Fla. Nov. 20, 2012) (granting summary judgment on TCPA claim when Plaintiff provided cellular telephone number when setting up cable service and cable company forwarded Plaintiff's account to debt collection company for collection); *Soppet v. Enhanced Recovery Co. LLC*, 679 F.3d 637 (7th Cir. 2012) (finding that listing cell phone number with a business gave both the business, and its collection agent "express consent."); *Pinkard v. Wal-Mart Stores, Inc.*, Case No. 12-cv-2902, 2012 WL 5511039, *2 (N.D.Ala. Nov.9, 2012) (holding that the plaintiff's provision of her number to a Walmart pharmacy in connection with dropping off a prescription constituted "express consent" to be called and noting that express consent as that term is defined in the TCPA "encompass[es] a situation where an individual voluntarily divulges her telephone number.") *Roberts v. PayPal, Inc.*, 2013 WL 2384242, *4-*5 (N.D.Cal. May 30, 2013).

Moreover, the consent Plaintiff gave Bright House Networks applied equally to Defendant after Bright House Networks assigned Plaintiff's account to Defendant. This is because "calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559, 564–65 ¶ 10 (Jan. 4, 2008). The court in *Saunders,* 910 F.Supp.2d at 466, held that when Plaintiff listed his cellular telephone number as the only contact number for the original creditor, the Plaintiff gave a third party contractor prior express consent to contact him via cellular telephone. Likewise here Plaintiff's prior express consent applies equally to CPA.

And even if Plaintiff did attempt to impose some limitation on the scope of consent she granted to Bright House, it would be ineffective under § 227(b)(1), as a person "who knowingly release[s][her] phone number ha[s] in effect given [her] invitation or permission" to be contacted

5

21915876v1 0970483

at that number, even if by a different means than intended by Plaintiff. *See Pinkard*, No. 3:12-CV-02902-CLS, 2012 WL 5511039, at *5 (holding that Plaintiff's provision of a cellular telephone number constituted express consent to be contacted by any means using that number, including the text messages at issue in that case).

Defendant at all material times had express prior consent to contact Plaintiff via her cellular telephone number, including by means of predictive dialer, and summary judgment is proper for Defendant on the issue of prior express consent.

**III.     CPA stopped calling once requested to so by Plaintiff**

Plaintiff alleges that any prior consent to being called by CPA was revoked by Plaintiff during one of multiple calls she alleges she spoke with a CPA representative. Deposition of Plaintiff pp. 48-52. However, Plaintiff's self-serving and uncorroborated contention that she revoked consent before the March 24, 2014 phone call is contradicted by the evidence in the record. The record evidence in this case is that all connected calls are recorded by CPA. Evans Dec. ¶17. In this case, there was only one recording of a call between CPA and Plaintiff on March 24, 2014. Evans Dec. ¶18. This call was verified by Plaintiff during her deposition. Deposition of Plaintiff at 68:23. CPA's records show that CPA stopped all calls to Plaintiff after the March 24, 2014, connected call. Evans Dec. ¶19. With respect to the alleged additional connected calls, Plaintiff is unable to provide any details regarding who she spoke to, including the gender or name of the person or whether the person had an accent. Deposition of Plaintiff at 50. Such uncorroborated statements that revocation did occur will not survive a motion for summary judgment. *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811 (S.D. Tex. 2014) (citing *Scott v. Harris,* 550 U.S. 372, 380 (2007)); *Self-Forbes v. Advanced Call Ctr. Techs., LLC*, No. 2:16-CV-1088, 2017 U.S. Dist. LEXIS 55913, *18 (D. Nev. Apr. 12, 2017).

IV.     **There is no evidence to support a violation of §1692e(2)(a), (5) or (10) of the FDCPA**

Plaintiff alleges that CPA violated 15 USC. §1692e(2)(A), (5) and (10) by "misrepresenting the imminence of legal action by Defendants." DE. 1-1 at ¶34b. The pertinent parts of section 1692e prohibit a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt" including the "false representation of the character, amount, or legal status of any debt;" "the threat to take any action that cannot legally be taken or that is not intended to be taken;" and "the false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Plaintiff testified that during her alleged telephone conversations with CPA representatives, the CPA representatives indicated to her that the representatives were aggressive, they would talk over her, and they acted as if they did not want to listen to her. Plaintiff's Deposition at 58. However, Plaintiff did not testify that any representative of CPA ever threatened legal action against her. When asked whether she had testified about the extent of the alleged conversations she had with CPA, Plaintiff answered that her testimony was complete in this regard. *Id.* at 59. Plaintiff also testified that she never received any letters from CPA. *Id.* Thus, any threat to take legal action would have to have been made by telephone and Plaintiff testified as to no such threat.

Therefore, CPA is entitled to summary judgment on Plaintiff's § 1692e claim because Plaintiff has failed to come forth with any record evidence that would create a material issue of fact that Defendant threatened to take legal action which could support a violation of §1692e.

V.      **CPA complied with §1692g(a) of the FDCPA**

Plaintiff claims that CPA violated 15 U.S.C. §1692g(a) by failing to send Plaintiff written confirmation of the alleged debt within five days of its initial communication. However, the

7

record evidence proves otherwise. Plaintiff's account was sent to CPA for collection on December 3, 2014. Evans Declaration ¶5. On December 5, 2014, CPA sent its initial communication to Plaintiff via U.S. mail. Evans Declaration ¶7. The original letter included the amount of the debt, the name of the creditor to whom the debt was owed. See Ex. C to Evans Declaration (*Ex. 1-C* hereto). The letter also included the following information under the heading "Notice of Important Rights:"

> The Fair Debt Collection Practices Act requires that we, as the debt collector, inform you that: unless you within thirty days after receipt of this initial notice, dispute the validity of the dent, or any portion thereof, the debt will be assumed valid by the debt collector. If you notify the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of judgment against you and mail it to you. If requested in writing within thirty days, the debt collector will also provide you with the name and address of the original creditor, if different from the current creditor.

*Id.* On its face, the information contained within the letter complied with §1692g(a). As the letter was CPA's initial communication, it complied with §1692g(a)'s requirement that the FDCPA disclosures be made with five days of the initial communication. The address for Plaintiff on her Bright House Account was 2614 Shilo Court, Valrico, FL. Ex. B to Evans Declaration (*Ex. 1-B* hereto). This address was confirmed to be Plaintiff's current address during her deposition. Plaintiff's Deposition at 8:15. According to ordinary business practices, CPA sent the initial letter to the 2614 Shilo Court Address. Evans Declaration ¶7. Such evidence discredits Plaintiff's self-serving testimony that she did not receive the December 5, 2014 letter. *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 19 (D. Mass. Nov. 20, 2012). Consequently, summary judgment should be entered for CPA on Plaintiff's §1692g(a) claim.

**VI. There is no evidence to support a violation of §1692c(c) of the FDCPA**

Plaintiff alleges that CPA violated 15 USC §1692c(c) by contacting the Plaintiff after the Plaintiff had requested that CPA cease communication with the Plaintiff. The evidence shows that there was no such violation, however. Section 1692c(c) of the FDCPA provides that "[i]f a consumer notifies a debt collector **in writing** that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." 15 U.S.C. §1692c(c) (emphasis added). The statute further provides that if such notification is made by mail, the notification "shall be complete upon receipt." *Id.* The undisputed testimony in this case is that Plaintiff never sent any written correspondence to CPA. Plaintiff's Deposition 59:10. This is further confirmed by CPA's records which show that no written correspondence was ever received from Plaintiff. Evans Dec. ¶9. Because Plaintiff never sent a written request to CPA to stop communicating with her, CPA is entitled to summary judgment on Plaintiff's §1692c(c) claim. *See, e.g., Grimsley v. Focus Din. Servs.*, No. 15-812630CIV, 2016 WL1920992, *6-*7 (S.D. Fla. March 25, 2016).

**VII. Plaintiff's claim of a violation of §1692c(a) fails as a matter of law**

Plaintiff claims that CPA violated 15 U.S.C. §1692c(a) by calling Plaintiff between the hours of 9 p.m. and 8 a.m. Plaintiff testified in her deposition that CPA called her several times between the hours of 9 p.m. and 8 a.m. CPA's records, however, show that no calls were made before 8 a.m. Eastern Time or after 9 p.m. Eastern Time. In fact, CPA's call center, where all calls are made, is generally only open between 7 a.m. Central Time and 7 p.m. Central Time and no calls can be made when the call center is closed. CPA's call records show only three calls that were made after 7 p.m. Central Time. The latest call made to the subject telephone number was at 7:29 p.m. Central Time on March 25, 2015. See Ex. D to Evans Declaration. Plaintiff will likely point to Sprint records that show calls to Plaintiff's telephone number during the

9

prohibited time period. However, Plaintiff admits that she made Wi-Fi calls using her home network. Plaintiff's Deposition at 37:21. The Sprint corporate representative testified that calls made over Wi-Fi are given a time stamp in Greenwich Mean Time (GMT) or at the switch time. Deposition of Jeffrey Strohm at 27:16. The switch time would be local to where the telephone is at the time of the call. Based on a comparison of CPA's phone records and the Sprint records, however, it is clear that the calls alleged to have been received by Plaintiff during the prohibited timeframe were actually calls that were recorded in GMT, some three to four hours later than Eastern Time (depending on daylight savings). Given the totality of the evidence and discounting Plaintiff's self-serving deposition testimony, it is clear that CPA did not violate 15 U.S.C. §1692c(a) by calling Plaintiff between the hours of 9 p.m. and 8 a.m. Therefore, summary judgment should be granted to CPA on Plaintiff's §1692c(a) claim.[1]

**VIII. Plaintiff's claim under Fla. Stat. § 559.72(7) fails because there is no evidence that Defendant intended to harass Plaintiff**

Plaintiff's claim under Fla. Stat. § 559.72(7) fails because there is no evidence that Defendant intended to harass Plaintiff. Section 559.72(7) of the FCCPA provides that in collecting consumer debts, no person shall:

> *Willfully* communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or *willfully* engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

Fla. Stat. Ann. § 559.72(7)(emphasis added). There are intentional differences between the FDCPA and FCCPA, and a violation of the federal statute does not automatically constitute a violation of the state statute in situations where the FCCPA is distinguishable. *Beeders v. Gulf*

---

[1] Summary judgment should be entered for CPA on Plaintiff's Fla. Stat. 559.72(17) claim alleging calls between the hours of 9 p.m. and 8 a.m. for the same reasons.

*Coast Collection Bureau, Inc.*, 809-CV-00458-EAK-AEP, 2010 WL 2696404 (M.D. Fla. July 6, 2010). For example, in *Niven v. Natl. Action Fin. Servs., Inc.*, 2008 WL 4190961, at * 2 (M.D. Fla. Sept.10, 2008), the court established that the plaintiff must prove a separate and more burdensome set of elements under the FCCPA than under the FDCPA. *Id*. The court in *Niven* made clear that a violation of the FDCPA does not automatically give rise to an independent cause of action under state law. *Id*. Furthermore, "[t]o establish liability under § 559.72, Florida Statutes, a plaintiff mush show that the debt collector willfully engaged in conduct that harassed the consumer." *Brandt v. I.C. System, Inc.*, 2010 WL 582051, at *2 (M.D. Fla. 2010). "It is clear that the FCCPA requires an allegation of knowledge or intent by the debt collector in order to state a cause of action." *Id.*

Florida appellate courts have considered harassment based on number of calls. For instance, in *Story v. J.M. Fields, Inc.*, 343 So.2d 675 (Fla. 1st DCA 1977), a case brought under the FCCPA in which there were more than 100 telephone calls during a five-month period, the appellate court stated:

> Story considered himself aggrieved by Fields' failure to repair a Fields brand air conditioner bought 15 months earlier. Story therefore advised Fields' credit manager, Allen, that he intended not to make payments on other merchandise Story had purchased on credit until the air conditioner was repaired. Story's evidence, which Allen substantially contradicted, tended to prove that Allen then telephoned Story at his home, at the residences of other members of his family, and at his business places to demand payment of Story's debt. According to Story's evidence, which we must accept in determining the propriety of a directed verdict, the telephone calls came almost daily, sometimes two or three times daily, and amounted to at least 100 calls over a period of five months. Story testified that he returned some but by no means all of Allen's calls, spoke with him at least once a week, and finally told Allen to stop bothering him and to take the matter to court, for he did not intend to pay.

\* \* \*

21915876v1 0970483

> Proof of numerous calls does not make a jury issue on liability if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation. The trier of fact may consider such communications harassing in their frequency, however, when they continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed. Beyond that point communication "can reasonably be expected to harass the debtor or his family," because it tends only to exhaust the resisting debtor's will. If the creditor intends that likely effect, further communication is willful and actionable.

*Id*. at 677.

The court in *Schauer v. Morse Operations, Inc*., 5 So.3d 2, 4-5 (Fla. 4th DCA 2009) also analyzed this issue and the opinion in *Story* and held that seven telephone calls, and only one in which there was anything which could be termed a threat was not egregious enough to be violative of §559.72(7). The court in *Schauer* held "[a]lthough plaintiff's wife testified that these calls were upsetting to her, her worries were not attributable to anything wrong that GMAC said to her, but rather her own concern about their ability to pay the loan." *Id; see also Lardner v. Diversified Consultants Inc.,* 17 F. Supp. 3d at 1216 (citing *Schauer*) (holding that debt collector making 132 calls did not violate the FCCPA).

In this case, CPA made only 86 calls to Plaintiff on the collection account. The 86 calls, which would be insufficient to create liability under the FDCPA, are even less able to create liability under the ***willful*** language of the FCCPA.[2]. Therefore, because the total number of collection calls was less than amounts that have been held to not violated the FCCPA, the 86 calls do not constitute willful harassment under the FCCPA.

---

[2] Although Defendant's records show 86, calls, Plaintiff continues to allege only 66 calls in violation of the FCCPA. *See* Plaintiff's Answers to the Court's Interrogatories, Dkt. 22 at ¶2.

12

## **CONCLUSION**

This Court should enter summary judgment in Defendant's favor. The record evidence does not support Plaintiff's claim that CPA intended to harass Plaintiff, as alleged under the FDCPA and FCCPA. Plaintiff's TCPA claim fails because Defendant had Plaintiff's prior express consent to call her on each of the separate accounts Bright House placed with CPA. Lastly, there is no evidence supporting that the calls CPA placed to Plaintiff's telephone number were placed willfully or knowingly in violation of the TCPA. Accordingly, this Court should grant Defendant's motion in its entirety.

WHEREFORE, Defendant, CREDIT PROTECTION ASSOCIATION, respectfully requests this Court enter an order granting this motion and enter summary judgment in Defendant's favor and against Plaintiff, and any other relief this Court deems proper.

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael A. Ziegler, Esq.
Law Office of Michael A. Ziegler, P.L.
13575 58th Street North
Suite 129
Clearwater, FL  33760
Tel:  727-538-4188
mike@zieglerlawoffice.com
Attorney for Plaintiff

*s/ Ruel W. Smith*
Ruel W. Smith, Esquire
Florida Bar No. 036548
rsmith@hinshawlaw.com
Andrew J. J. Collinson, Esquire
Florida Bar No. 0055552
acollinson@hinshawlaw.com
HINSHAW & CULBERTSON LLP
100 South Ashley Drive
Suite 500
Tampa, Florida 33602
813-276-1662 - T
813-276-1956 – F
Attorneys for Defendant CREDIT PROTECTION ASSOCIATION, LP