UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA GARRETT,

      Plaintiff,

v.                      Case No. 8:16-cv-2999-T-33AAS


CREDIT PROTECTION
ASSOCIATION, L.P.,

      Defendant.
_____/

**<u>ORDER</u>**

This matter comes before the Court upon consideration of Defendant Credit Protection Association's (CPA) Motion for Summary Judgment (Doc. # 43), filed on June 12, 2017. Plaintiff Angela Garrett filed her Response to Defendant's Motion (Doc. # 48) on July 10, 2017. Also before the Court is Defendant's Motion to Strike Portions of Plaintiff's Response (Doc. # 54), filed on July 21, 2017. Garrett filed her Response in Opposition to Defendant's Motion to Strike (Doc. # 56) on July 24, 2017. As explained below, the Court grants the Motion to Strike and denies the Motion for Summary Judgment.

I.    **Background**

On July 26, 2014, Bright House completed a work order at Garrett's home in Valrico, Florida. (Doc. # 49-1 at 33, 77). Garrett contends that, at that time, Bright House picked up a router to close out the balance on her account. (Doc. # 49-1 at 41-42). CPA introduced a work order from the July 26, 2017, Bright House visit showing the job description as "RECONNECT/RESTART." (<u>Id.</u> at 77). But, under "NOTES TO TECHNICIAN," the work order states "pick up only." (<u>Id.</u>). After completing the job, the technician presented Garrett with the work order, which she signed. (<u>Id.</u> at 33, 77). The work order lists Garrett's pre-printed cell phone number. (<u>Id.</u> at 77). Whether Garrett had an outstanding balance with Bright House resulting from this visit is in dispute. (Doc. # 49-1 at 44).

On or about December 3, 2014, Bright House forwarded Garrett's allegedly unpaid account balance to CPA for collection purposes and provided it with Garrett's cellular telephone number as the contact number for the account. (Doc. 43-1 at 1-2). Garrett testified CPA informed her the balance was for over six-hundred dollars. (Doc. # 49-1 at 51).

Beginning in December of 2014, CPA placed several calls to Garrett's cell phone in connection with the disputed Bright

House balance. (Doc. # 43-1 at 11). According to CPA, it attempted no more than eighty-six calls to Garrett between December of 2014 and March 24, 2015. (Doc. # 43 at 2). Garrett contends she informed CPA during the first call that she returned the Bright House router in question, and that there was no outstanding debt. (Doc. # 49-1 at 48). According to Garrett, CPA called her again, at which point she answered and asked CPA to stop calling. (Id. at 49). Still, Garrett contends — and proffered phone records indicating — that CPA called her sixty-six additional times. (Doc. # 27 at 1). In contrast, CPA claims Garrett first requested that CPA stop calling her on March 24, 2015, after which it did stop. (Doc. # 30 at 2).

Garrett contends she answered several of CPA's calls and spoke with different representatives. (Doc. # 49-1 at 49). She alleges that the representatives were rude, spoke over her, and told her it did not matter that she requested they stop calling her. (Id. at 49, 56). CPA offers its own records to show there was only one connected call with Garrett, and states that all of its calls are recorded. (Doc. 43-1 at 3). But, Garrett has provided Sprint records showing multiple connected calls. (Doc. # 48-1; Doc. # 48-2; Doc. # 48-3; Doc. # 48-4). Further, the record supports CPA called Garrett up

3

to three times per day. (Doc. # 43-1 at 11-12; Doc. # 48-6; Doc. # 49-1 at 51).

Additionally, at least fifty-five of the calls Garrett received from CPA were prerecorded voice calls. (Doc. # 30 at 1; Doc. # 48-5 at 3). All of CPA's calls to Garrett were through a system that constituted a predictive dialer under the FCC's 2007 declaratory ruling (FCC 07-232). (Doc. # 48-7 at 1).

Finally, Garrett claims CPA called her between the hours of 9:00 p.m. and 8:00 a.m. on several occasions. (Doc. # 2 at 3). CPA provided its records indicating that there were no phone calls made at these times. (Doc. # 43-1 at 11-12). CPA further alleges it is closed each day by 7:00 p.m. Central Time, and therefore does not usually make calls to debtors after 7:00 p.m. Central Time. (Doc. # 43-1 at 3). Garrett's Sprint records do indicate there were calls from CPA recorded between 9:00 p.m. and 8:00 a.m.; however, Sprint's representative stated in his deposition that Sprint does not have the capability to determine whether those calls were recorded in local time or Greenwich Mean Time (GMT) because Garrett's phone was connected to a WiFi network. (Doc. # 48-2; Doc. # 48-3; Doc. # 49-2 at 50-51). Garrett claims she remembers CPA called her at 1:00 a.m. because she thought it

4

was an emergency phone call, but later saw and confirmed it was a call from CPA. (Doc. # 49-1 at 53-54).

Garrett initiated this action in state court on July 5, 2016. (Doc. # 1 at 1). CPA removed the case to this Court on October 24, 2016, under 28 U.S.C. §§ 1441(a) and 1446. Garrett alleges the following counts:

1. Count I — using an automated telephone system to contact a cellular phone in violation of the Restrictions on Use of Telephone Equipment provision, 47 U.S.C. § 227(b)(1);

2. Count II — calling Garrett between the hours of 9:00 p.m. and 8:00 a.m. in violation of the FDCPA, 15 U.S.C. § 1692c(a); and misrepresenting the imminence of legal action by CPA in violation of the FDCPA, 15 U.S.C. § 1692e(2)(A);

3. Count III — willfully communicating with Garrett in a way that can reasonably be expected to harass her in violation of the FCCPA, Fla. Stat. § 559.72(7); calling Garrett between the hours of 9:00 p.m. and 8:00 a.m. without her prior consent in violation of the FCCPA, Fla. Stat. § 559.72(17).

(Doc. # 2).

CPA filed its answer (Doc. # 18) on October 31, 2016. The parties mediated on January 17, 2017 and met an impasse. (Doc. # 35). CPA filed its Motion for Summary Judgment (Doc. # 43) on June 12, 2017, and Garrett filed her Response (Doc. # 48) on July 10, 2017. In addition, CPA has filed a Motion to Strike directed at certain allegations and arguments in Garrett's Response to CPA's Motion for Summary Judgment,

which CPA characterizes as an improper attempt to raise unpled claims under the FDCPA. (Doc. # 54). Garrett has opposed that Motion. (Doc. # 56). The Motions are ripe for review.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc.,

6

357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).  However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only

proper, but required.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Analysis**

CPA's Motion seeks judgment in favor of CPA on all Counts set forth in the Complaint, with the exception of Garrett's claim under Count III for violation of Fla. Stat. § 559.72(17). See (Doc. # 43). The Court will address each Count in turn.

### A. **Count I - TCPA - 47 U.S.C. § 227(b)(1)(A)**

In Count I, Garrett alleges that CPA violated 47 U.S.C. § 227(b)(1)(A) of the TCPA, which states:

> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice—
>
> ***
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which a called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

The parties agree the relevant telephone calls were made to collect an alleged debt; therefore, the calls were not made for emergency purposes. (Doc. # 43-1; Doc. # 48 at 2). Further, CPA admits that it used a predictive dialer to contact Garrett. (Doc. # 30 at 1).

As set forth in _Johnson v. Credit Protection Association, L.P._, No. 11-80604-CIV, 2012 WL 5875605, at *3-4 (S.D. Fla. Nov. 20, 2012):

> With respect to the TCPA, the Federal Communications Commission (FCC) has issued a declaratory ruling clarifying that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" of the called party. This order states, in part, as follows:
>
> ***
>
> Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

(internal citations omitted).

Here, Garrett admits that she signed a Bright House work order, which contained her cellular telephone number. (Doc. # 49-1 at 33). Bright House then sent Garrett's allegedly unpaid account to CPA for collection and provided it with Garrett's cell phone number as the contact number. (Doc. # 43-1 at 1-2). The Court finds that Garrett's furnishing of

her cell phone number to Bright House, along with her subsequent signature on the work order, are sufficient to create consent. See Johnson, 2012 WL 5875605, at *3-4.

Regardless, Garrett contends that consent was revoked when she answered one of CPA's calls and requested that it stop calling her. (Doc. # 48 at 8; Doc. # 49-1 at 49). Garrett correctly argues that, although the TCPA is "silent regarding revocation of consent, courts considering the issue have held that it is possible for consumers seeking to halt calls to their cell phones to revoke prior consent to such calls." Legg v. Voice Media Group, Inc., 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014)). And, "any silence in the statute as to the right of revocation should be construed in favor of consumers." Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014). "Consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular contact." Id. at 1252-53 (citing Restatement (Second) of Torts § 892A (1979)).

However, CPA denies Garrett revoked consent prior to the March 24, 2015, phone call. (Doc. # 43 at 6). CPA offers its own records showing there was only one connected call between itself and Garrett. (Doc. # 43-1 at 4). CPA further claims it records all of its calls, and therefore, the fact it has only

10

one recording of a call with Garrett is proof that there was no call prior to March 24, 2015. (Doc. # 43 at 6). Still, Garrett has offered testimony and objective third-party evidence authenticated by a Sprint representative, which shows thirty-seven connected calls between herself and CPA. (Doc. # 48 at 10; Doc. # 49-2 at 19). Garrett notably points out that "these calls were not captured by [CPA's] recording system, calling into question [its] recording system's accuracy and credibility as a whole." (Doc. # 48 at 10).

A review of the parties' arguments and the record before the Court demonstrates that there remains a question of material fact as to whether Garrett effectively revoked the prior consent given to CPA. Garrett contends she revoked consent during the first few contacts by CPA. (Id. at 8; Doc. # 49-1 at 49). CPA, however, argues there was no such phone call. (Doc. # 43 at 6). This is exactly the kind of factual dispute that cannot properly be resolved on summary judgment. Thus, CPA's Motion for Summary Judgment is denied as to Count I.

**B. Count II — FDCPA**

To prevail on an FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a

11

debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002) (quoting Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)).

### 1. Collection Activity Arising from a Consumer Debt

In order to establish she has been the object of collection activity arising from a consumer debt, Garrett must meet two requirements. Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011). First, there must be collection activity. Id. Second, this activity must relate to a consumer debt. Id.

The "FDCPA does not expressly define 'collection activity.'" LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 n.15 (11th Cir. 2010). Nonetheless, "[w]hile the statute contains no clear definition of what constitutes a debt collection activity, courts, in attempting to effect the purpose of the FDCPA, are lenient with its application." Sanz v. Fernandez, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009). According to the Complaint, CPA made numerous telephone calls to Garrett regarding the repayment of an alleged debt. (Doc. # 2 at 3). CPA admits to this allegation. (Doc. # 30 at 1).

Therefore, the Court finds these calls constitute collection activity.

The Court next turns to whether the collection activity was aimed at collecting a consumer debt. Pursuant to 15 U.S.C. § 1692a(5), a debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction. . . [that is] primarily for personal, family, or household purposes." Thus, the FDCPA is limited to "consumer debt," Heintz v. Jenkins, 514 U.S. 291, 293 (1995), and does not cover business debts, Lino v. City of Albany Dep't of Cmty. & Econ. Dev., 195 F. App'x 891, 893 (11th Cir. 2006). Here, the alleged debt CPA was attempting to collect was incurred for home internet, phone, and cable services. (Doc. # 49-1 at 36). Thus, the collection activity by CPA was aimed at collecting consumer debt.

### 2. Debt Collector

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due." See 15 U.S.C. § 1692a(6). Defendant admitted it placed telephone calls and mailed correspondence to Garrett

13

regarding the alleged Bright House debt. (Doc. # 43-1 at 2).

Therefore, the Court finds CPA is a debt collector.

### 3. 15 U.S.C. § 1692c(a)

In Count II, Garrett alleges CPA violated two separate provisions of the FDCPA. First, Garrett claims CPA violated 15 U.S.C. § 1692c(a), which provides:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location

Garrett alleges, and has offered Sprint records to demonstrate, that CPA called her on the following dates and times: December 11, 2014, at 9:50 p.m.; December 12, 2014, at 1:40 a.m.; December 16, 2014, at 11:36 p.m.; January 16, 2015, at 1:11 a.m.; January 23, 2015, at 9:13 p.m.; and February 12, 2015, at 11:43 p.m. (Doc. # 48 at 14; Doc. # 48-1; Doc. # 48-2; Doc. # 48-3; Doc. # 49-2 at 48, 49, 50, 51). CPA, however, submits its own call records to suggest that no calls were made between the hours of 9:00 p.m. and 8:00 a.m. (Doc.

14

# 43 at 9; Doc. # 43-1). CPA further contends its hours of operation are from 7:00 a.m. and 7:00 p.m. Monday through Thursday and from 7:00 a.m. and 5:00 p.m. on Friday, and that, in general, it makes no calls to debtors after 7:00 p.m. Central Time. (Doc. # 43-1 at 3). But, CPA admits that it placed a phone call to Garrett at 7:29 p.m. Central Time. (Id.). Still, CPA asserts it has additional safeguards in place to prevent calls outside the allowable time frame, such as keeping records of the zip codes of debtors to prevent calls outside of allowable hours. (Id.).

Additionally, CPA contends that Garrett's use of WiFi to make telephone calls using her home network caused the calls from CPA to Garrett to be recorded in GMT rather than local time. (Doc. # 43 at 10). And, Sprint's representative testified in his deposition that it is impossible for Sprint to determine whether the calls were made and recorded in local time or GMT. (Doc. # 49-2 at 51).

From the conflicting evidence set forth above, a reasonable fact finder could conclude that the calls either were or were not made outside of the allowable hours. CPA has failed to show that no genuine issue of material fact exists regarding the time of the calls. Garrett has presented factual evidence in the form of admissible third-party phone records

and testimony by a Sprint representative to support her claim
that calls were made outside of the allowable hours. The Court
finds that this demonstrates a genuine dispute of material
fact as to whether the calls were made outside the acceptable
hours. Thus, the determination of this element is not suitable
for disposition on summary judgment.   Thus the Motion for
Summary Judgment is denied as to this claim.

### 4. 15 U.S.C. § 1692e(2)(A)

The second basis of Garrett's FDCPA claim, asserted in
Count II, is that CPA violated 15 U.S.C. § 1692e(2)(A), which
states:

> A debt collector may not use any false, deceptive,
> or misleading representation or means in connection
> with the collection of any debt. Without limiting
> the general application of the foregoing, the
> following conduct is a violation of this section:
>
> ***
>
> (2) The false representation of--
>
> (A) the character, amount, or legal status of any
> debt.

Garrett contends that a jury might find CPA liable under
the FDCPA on the ground that it misrepresented the status of
the debt. (Doc. # 48 at 12). Garrett testified she informed
CPA during the first phone call that she had returned the
router, which was the basis of the outstanding debt; yet, CPA

continued to call Garrett in an attempt to collect. (Doc. #
48 at 12; Doc. # 49-1 at 48, 52). Garrett asserts that such
circumstances show a violation of 15 U.S.C. § 1692e(2)(A).
But, CPA moves to strike this claim, arguing that it does not
appear in Garrett's pleading. The Court agrees with CPA.

The only portion of Garrett's Complaint potentially
giving notice of this claim is that

> Defendants violated the FDCPA. Defendants'
> violations include, but are not limited to, the
> following:
>
> ***
>
> Defendants violated 15 U.S.C. § 1692e(2)(A), (5),
> and (10) by misrepresenting the imminence of legal
> action by Defendants.

(Doc. # 2 at 5). Garrett contends that CPA was on notice
because the Complaint cited § 1692e(2)(A), which
prohibits the use of "false representations" regarding
the "legal status of any debt." (Doc. # 56 at 7). Garrett
further contends that CPA was on notice from her use of
the term "alleged debt" rather than stating such debt
was properly owed. (Doc. # 56 at 7).

Garrett's arguments are unconvincing. Garrett's
Complaint does not even claim that she previously
satisfied the debt, which alone would be insufficient.
See Thompson v. Resurgent Capital Servs., L.P., No.

2:12-cv-01018-JEO, 2015 U.S. Dist. LEXIS 41639, at *41 (N.D. Ala. March 31, 2015)("contrary to Plaintiff's suggestion, her assertion that she 'does not owe any money to Defendants' did not itself put Defendants on notice of every conceivable factual or legal basis for why Plaintiff might claim that to be so. . . . The fact of the matter is that Plaintiff has pled *nothing* about Defendant's ownership of the debt, an ineffective purchase or assignment, or a chain of title, so Defendants had no notice of this theory of liability."). Here, Garrett has pled nothing concerning a false representation of the character, amount, or legal status of the debt, or that such debt was uncollectible as a result of Garrett having previously satisfied it. As in Thompson, Garrett's citation to a list of numbered statutes within the FDCPA does not salvage the claim. See Id. at *42.

"Such boilerplate can assist in providing a framework for a claim as to pled factual allegations, but, in and of itself it amounts to even less than the 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' that Iqbal and Twombly instruct are insufficient." Id. (citing Lind v. Midland

18

Funding, LLC, 688 F.3d 402, 409 (8th Cir. 2012)(affirming dismissal for failure to state a claim where the complaint alleged numerous violations of the FDCPA, and cited many provisions, but contained no specific facts that demonstrated these violations, other than stating that defendants seized funds from one of the plaintiffs for a debt she did not owe))(internal quotation marks omitted). Because Garrett has not pled facts to give notice of this FDCPA claim, CPA's Motion to Strike is granted.  Garrett's FDCPA claim predicated upon violation of 15 U.S.C. § 1692e(2)(A) is stricken.

## C. **Count III - FCCPA**

In Count III, Garrett asserts CPA violated the FCCPA in two ways – by making harassing calls (Fla. Stat. § 559.72(7)) and by calling her during prohibited times (Fla. Stat. § 559.72(17)).  CPA does not seek summary judgment on the issue of whether it placed calls to Garrett during prohibited times in violation of the FCCPA.  Therefore, with respect to Count III, this Order only addresses Fla. Stat. § 559.72(7), which provides:

In collecting consumer debts, no person shall:

(7)  Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or

her or his family, or willfully engage in other
conduct which can reasonably be expected to abuse
or harass the debtor or any member of her or his
family.

Under the FCCPA, the question of whether conduct is
harassing or abusive is ordinarily an issue for the
factfinder. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179
(11th Cir. 1985); Story v. J.M. Fields, Inc., 343 So.2d 675,
677 (Fla. 1st DCA 1977). Still, courts will grant summary
judgment where a plaintiff rests on the number of phone calls,
without other evidence of harassing conduct. See Lardner v.
Diversified Consultants Inc., 17 F. Supp. 3d 1215, 1225-26
(S.D. Fla. 2014); Valle v. Nat'l Recovery Agency, No. 8:10-
cv-2775-T-23MAP, 2012 U.S. Dist. LEXIS 69564, at *4 (M.D.
Fla. May 18, 2012) (reviewing factors that may demonstrate
harassment).

CPA cites Story to support its proposition that its
eighty-six calls during a four-month period were not
harassing enough to violate Fla. Stat. § 559.72(7). As the
First District Court of Appeal explained in Story:

> Proof of numerous calls does not make a jury issue
> on liability if all must agree the creditor called
> only to inform or remind the debtor of the debt, to
> determine his reasons for nonpayment, to negotiate
> differences or to persuade the debtor to pay
> without litigation. The trier of fact may consider
> such communications harassing in their frequency,
> however, when they continue after all such

20

information has been communicated and reasonable efforts at persuasion and negotiation have failed. 343 So.2d at 677. In Story, the court held that 100 calls in a 5-month period, continuing after the defendant was told to quit calling, presented a jury question. Id.

Garrett testified she told CPA during the first call that she had returned the router and to stop calling her. (Doc. # 49-1 at 48-49). That testimony distinguishes the instant case from CPA's cited authority, in which no evidence of harassment was presented beyond the number of calls. See Lardner, 17 F. Supp. 3d at 1226 (holding 132 calls over eight months was insufficient where the plaintiff produced no other evidence, "such as requesting the communications to stop"); Waite v. Fin. Recovery Servs., Inc., No. 8:09-cv-02336-T-33AEP, 2010 WL 5209350, at *4 (M.D. Fla. Dec. 16, 2010) (holding pattern of calls was insufficient where there was no indication that the plaintiff ever confirmed or disputed the debt, or asked the defendant to stop calling). Although Garrett's testimony is in dispute, it must be credited for the purposes of CPA's Motion for Summary Judgment.

Based on the high volume of calls, as well as Garrett's testimony that she told CPA that the debt was not owed and asked CPA to stop calling her, a genuine issue of material fact exists as to whether the calls were harassing or abusive under the FCCPA. CPA's Motion is therefore denied on Garrett's claim pursuant to Fla. Stat. § 559.72(7).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Credit Protection Association, L.P.'s Motion to Strike (Doc. # 54) is **GRANTED.** Garrett's FDCPA claim predicated upon violation of 15 U.S.C. § 1692e(2)(A) is **STRICKEN.**

(2)   Defendant Credit Protection Association, L.P.'s Motion for Summary Judgment (Doc. # 43) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of July, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE